In re Irwin A. TOBMAN, Debtor.

Morton A. BENDER, Plaintiff,

v.

Irwin A. TOBMAN, Defendant.

Bankruptcy No. 87 B 10632 (BRL).
Adv. No. 88–5317A.

United States Bankruptcy Court,
S.D. New York.

Feb. 14, 1989.

Proskauer Rose Goetz & Mendelsohn, by Sheldon B. Hirshon, Robert M. Schwartz, New York City, for plaintiff/creditor.

Law Offices of Donald J. Tobias, by Donald J. Tobias, New York City, for defendant/debtor.

## DECISION ON MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

### I. INTRODUCTION

The discharge provisions of the Bankruptcy Code (the "Code") were intended to give an honest debtor a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970); *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988). However, when a debtor has engaged in unwholesome conduct, he becomes ineligible for entitlement to the "fresh start" desideratum. Congress, therefore, created various exceptions to discharge enumerated in § 523 of the Code.[1] In determining whether a particular debt falls within one of these exceptions, "the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." 3 Collier, *Bankruptcy* ¶ 523.05A, at 523–16 (15th ed.1987).

In the instant case, Defendant Tobman, ("Debtor/Tobman"), argues that although a jury found that Plaintiff Bender, ("Creditor/Bender"), was entitled to both compensatory damages and punitive damages against Tobman for fraudulent inducement,

---

1. Section 523 of the Code enumerates exceptions to discharge which are derived from § 17(a) of the National Bankruptcy Act of 1898 (30 Stat. 544 (1898)).

willful conversion, and violation of Rule 10b–5 of the Securities and Exchange Act of 1934, Bender is not entitled to summary judgment as to the issue of nondischargeability pursuant to § 523 of the Code. Bender, on the other hand, asserts that based on the doctrine of collateral estoppel, Tobman is precluded from relitigating facts which were previously determined by a Special Verdict in the United States District Court for the District of Columbia (the "District Court Action"), and therefore there are no genuine issues of material fact to be tried in this subsequent nondischargeability proceeding. For the reasons that follow, this Court concludes that this motion is ripe for summary judgment determination.

## II. FACTS

On October 16, 1981, Bender filed a complaint (the "District Court Complaint") against Tobman and others in the District Court Action. The District Court Action was later consolidated with a civil action by American Security Bank N.A. ("ASB") against Tobman and others. (*Morton A. Bender v. Irwin A. Tobman et al.*, Civ. Nos. 82–0533 and 81–2517 (OG)).

The following is a summary of District Judge Gasch's instructions to the District Court Jury, (the "Jury Instructions"), which recounted Bender's multi-count Complaint, which *inter alia* asserted claims against Tobman for fraudulent inducement, willful conversion, securities fraud, and breach of fiduciary duty:

(1) It is undisputed that Bender gave Tobman $125,000 for the purpose of purchasing a 25% interest in Universal Housing and $162,500 for the purpose of making loans to Universal Housing. The Complaint asserts that Tobman orally personally guaranteed Universal Housing's obligation to Bender. The Complaint further asserts that Tobman's leading purpose for making the guarantee was to obtain a direct personal benefit because, it is alleged, Bender's funds were used to satisfy Tobman's own loan obligations.

(2) The Complaint maintains that Bender never received the stock in Universal Housing for which he paid Tobman $125,000. It is undisputed that the stock in question was transferred from a third party to Tobman and that Bender was never listed as a stockholder in Universal Housing's books. The Complaint also claims that Tobman converted Bender's funds by purchasing the stock and having it registered in his own name and thereafter failing to deliver the stock to Bender.

(3) The Complaint alleges that Tobman converted the $110,000 which Bender gave Tobman for the purpose of making a loan to Universal Housing. It further asserts that Tobman misused these funds by using them for his own purpose, and to the extent that the loans were actually made to Universal Housing, these loans were recorded under the name of Tobman to Tobman Management Corporation and not under Bender's own name.

(4) The Complaint also asserts various claims based upon Tobman's fraudulent inducement of Bender to advance funds for Tobman and Universal Housing. Bender claims (i) that Tobman misrepresented to him the financial condition and business prospects of Universal Housing and a second corporation, Extrudyne; (ii) that Tobman misrepresented the capital contributions and loans that had been made to one of the corporations by Tobman and a third party; (iii) that Tobman misrepresented his own financial condition and ability to make further loans to the corporations; (iv) that Tobman misrepresented how Bender's funds were going to be applied; and (v) that Tobman misrepresented that Bender's loans would be fully secured.

(5) The Complaint alleges that based upon the aforementioned misrepresentations, Tobman's conduct constituted a violation of Rule 10b–5 of the Securities and Exchange Act of 1934. (*See* Jury Instructions at 15–19; District Court Complaint.)

The District Court Action was fully tried before a jury and on February 14, 1983 the

Jury found for Bender in the form of a Special Verdict. The Jury found that Bender had been damaged by reason of Tobman's fraudulent inducement and violations of Rule 10b–5 of the Securities and Exchange Act of 1934. The Jury also found that Bender was entitled to punitive damages on his claims against Tobman. The pertinent parts of the Jury Verdict are summarized as follows:

1) Defendant had fraudulently induced Plaintiff to transmit to Defendant the sum of $125,000 for the purpose of purchasing stock in Universal Housing. (*See* Verdict Form 1(a)).

2) Defendant had fraudulently induced Plaintiff to make a $110,000 loan to Universal Housing in May, 1978. (*See* Verdict Form 1(b)).

3) Defendant had fraudulently induced Plaintiff to make a loan of $52,500 to Universal Housing in October, 1978. (*See* Verdict Form 1(c)).

4) Jury awards Plaintiff punitive damages against Defendant in the amount of $100,000. (*See* Verdict Form 6(b)).

On February 14, 1983 the District Court entered two Judgments totalling $387,500 plus costs later assessed at $5,742.02. The Judgments were later amended on May 26, 1983 to reflect an additional $38,748.44 in accrued pre-judgment interest on Bender's $52,500 loan to Tobman.

On February 25, 1983, Tobman moved pursuant to Federal Rule of Civil Procedure 50(b) (the "Federal Rules") for Judgment Notwithstanding the Jury's Verdict seeking an order disallowing the Jury's award against Tobman on the issue of punitive damages and disallowing the Jury's award finding Tobman liable as a guarantor of the $110,000 loan to Universal. The District Court Judge, by Order dated

March 3rd 1983, denied Tobman's motion for Judgement Notwithstanding the Verdict on the issue of punitive damages without reaching the merits of his arguments because Tobman's Counsel had not satisfied the procedural requirements for the maintenance of a JNOV Motion on this issue. The Judge, however, granted Tobman's motion on the issue of both his and Universal's liability as guarantor of the $110,000, May 18, 1978 promissory note.

On March 24, 1983 a Judgment was entered in the District Court Action against Tobman in favor of ASB in the amount of $755,405.84 plus interest. Bender had previously guaranteed the obligation represented by the ASB Judgment. On June 17, 1983, ASB assigned all of its rights, title and interest in the ASB Judgment in consideration of payments made by Bender in fulfillment of his obligation under the guarantee.[2]

On April 7, 1987, Bender filed an involuntary petition pursuant to § 303 of the Code against Tobman seeking the entry of an order for relief pursuant to Chapter 7 of the Code. On September 22, 1987 the Court entered an Order of relief in this case.

On April 4, 1988, Bender filed the instant adversary Complaint against Tobman which *inter alia* seeks the entry of an order pursuant to §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Code barring the discharge of Tobman's aforementioned Judgment debts to Bender.[3] A separate suit to bar Tobman's discharge in bankruptcy pursuant to § 727 of the Code has been brought by Tobman's Trustee in bankruptcy and is pending.

By notice of motion, Bender moved for summary judgment pursuant to Federal Rule 56[4] made applicable herein pursuant

---

**2.** That portion of Plaintiff's motion for summary judgment regarding the assignment of the ASB Judgment has been withdrawn.

**3.** As this Court holds that Plaintiff's claims are nondischargeable pursuant to § 523(a)(2)(A) based upon the Jury's findings against Tobman on the issue of fraudulent inducement, there is no need to consider the issue of nondischarge-

ability pursuant to §§ 523(a)(2)(B), 523(a)(4) or 523(a)(6).

**4.** Federal Rule of Civil Procedure 56(c) provides in pertinent part that the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

to Bankruptcy Rule 7056.[5] In addition, Bender seeks a protective order pursuant to Federal Rule 26 and 34 made applicable herein pursuant to Bankruptcy Rules 7026 and 7034 quashing Tobman's First Request for the Production of Documents. Bender's motion for summary judgment is based on the doctrine of collateral estoppel, which Bender asserts precludes Tobman from relitigating the facts that were tried in the District Court. Bender argues that the District Court Jury, as factfinder, made determinations identical to those necessary pursuant to § 523 as alleged in the instant Complaint, and thus there are no genuine issues of material fact remaining for this Court's consideration regarding nondischargeability of the Judgment debts.

In contrast, Tobman argues that Bender cannot be granted summary judgment based upon Bender's Complaint because collateral estoppel is not applicable to the instant proceeding. Tobman asserts that the District Court record is completely silent as to the factual basis behind the Jury's Special Verdict and thus claims that there was never a determination, in that forum, of the factual issues necessary to establish fraud, willful and malicious injury to property, or that fraud or defalcation was committed by Tobman while acting in a fiduciary capacity pursuant to § 523. Thus, Tobman seeks an entry of an order granting him partial summary judgment and dismissing that portion of Bender's Complaint wherein it alleges that the Judgment for accrued interest in the sum of $38,748.44 is nondischargeable. Tobman maintains that neither this Judgment for accrued interest nor the punitive damage award in the sum of $100,000 are based upon any findings cognizable under § 523 and thus these claims cannot be deemed nondischargeable as a matter of law. In addition, Tobman seeks an order mandating that Bender comply with Tobman's outstanding request for pre-trial discovery and awarding Defendant sanctions, including costs and attorneys' fees, as authorized under Federal Rule 11 of and Bankruptcy Rule 9011.

## DISCUSSION

### III. SUMMARY JUDGMENT

"Summary judgment ... is an extraordinary remedy which should be granted with great caution...." *In re Overmyer,* 52 B.R. 111, 114 (Bankr.S.D.N.Y.) *motion to amend denied,* 53 B.R. 952 (1985); *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). However, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate where the movant demonstrates that there are no genuine issues of material fact to be tried. *In re O.P.M. Leasing Services, Inc.,* 46 B.R. 661, 665 (Bankr.S.D.N.Y.1985). Thus, "only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities must be resolved and all reasonable inferences must be drawn in favor of the party against whom summary judgment is sought. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 10–11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir.1978).

In determining whether there are any genuine issues of material fact which would necessitate a trial, the Court must go beyond the mere pleadings of the parties, by examining all of the admissible evidence set forth in the papers and considering all inferences reasonably deducible from such evidence. *In re Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984); *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine*

---

5. Bankruptcy Rule 7056 provides that "Rule 56 F.R.Civ.P. applies in adversary proceedings."

*Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir.1977); *United States v. Matheson*, 532 F.2d 809, 813 (2d Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976).

"Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions." *In re Esposito*, 44 B.R. at 821. However, in the instant case, Bender relies on the collateral estoppel effect of the Jury Verdict in the District Court Action in his motion for summary judgment. Therefore, Bender has the burden of introducing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Spector*, 22 B.R. 226, 231 (Bankr.N.D.N.Y.1982) (quoting *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980). *See also, Allen v. Zurich Insurance Co.*, 667 F.2d 1162, 1166 (4th Cir.1982). In the instant case, Bender has submitted the following: Bender's Second Amended Complaint filed in the District Court Action; Special Verdict Form (the "Special Verdict"); Statement pursuant to Local Bankruptcy Rule 13(h) [6]; Judgment on the Verdict for Plaintiff in the amount of $277,500.00; Judgment on the Verdict for Plaintiff for $110,000.00; Order and Judgment amending previous Judgment adding $38,748.44 in pre-judgment interest; Bill of Costs; Jury Instructions; Defendant Tobman's District Court Motion Under Rule 50(b); Memorandum of Points and Authorities in Support of Defendant Tobman's District Court Motion Under Rule 50(b); Order dated March 3, 1983, denying in part and granting in part Defendant's Motion under Rule 50(b).

These submissions establish a sufficient record to enable this Court to grant Bender's summary judgment Motion. Tobman has not produced any genuine issues of fact in dispute which would necessitate another trial.[7] In fact, the essential portions of Tobman's 13(h) statement as to factual matters which are not in dispute closely parallels Bender's 13(h) statement as to the factual elements relevant to a determination of dischargeability.[8] Tobman, however, includes several additional items in his 13(h) statement which he maintains are issues of material facts which are in dispute, asserting the existence of a bar to the grant of Bender's summary judgment Motion.[9] Upon closer examination, it

---

6. Local Bankruptcy Rule 13(h) provides that upon a motion for summary judgment the moving party is required to submit "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." The party opposing a motion for summary judgment must include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."

Rule 13(h) further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

7. As Defendant has failed to controvert Plaintiff's 13(h) statement regarding the following material facts, he is deemed to have admitted them:

1. Plaintiff filed his Complaint against Defendant and others in the District Court for the District of Columbia.

2. The Bender Complaint asserted *inter alia* claims against Defendant for fraud, conversion, securities fraud and breach of fiduciary duty.

3. The District Court Action was fully tried before a jury pursuant to the Federal Rules of Evidence.

4. The Special Verdict form provides that the Jury found for the Plaintiff on the issues of fraudulent inducement and violations of Rule 10b–5 of the Securities and Exchange Act of 1934.

5. The Jury also held that Plaintiff was entitled to punitive damages.

6. On February 14, 1983 the District Court entered two Judgments totalling $387,500 (including the aforesaid punitive damages) on the Jury's verdict against Defendant in the District Court Action, plus costs later assessed at $5,742.02. The Judgments were later amended on May 26, 1983 to reflect an additional $38,-748.44 in accrued interest on the $52,500.00 claim.

8. Defendant disputes Plaintiff's assertion in Plaintiff's 13(h) Statement that the Jury found for Plaintiff on the issue of "fiduciary fraud". However, the issue of "fiduciary fraud" is not relevant or necessary to this Court's determination of nondischargeability pursuant to § 523(a)(2)(A) based upon the Jury's finding of "fraudulent inducement".

9. Counsel for Defendant includes the following pertinent items in his 13(h) Statement:

13. In the Special Verdict form completed by the Jury there were no findings of any kind

is clear that these items are not statements of material facts, but rather, Tobman's conclusions of law which are improperly presented as material facts within his 13(h) Statement. It is this Court which must make a determination, as a matter of law, upon the record before it and the relevant case law, as to whether the factual issues necessary to meet the "fraud" criteria cognizable pursuant to § 523 have been established in the District Court proceeding. Based upon the record, including Bender's submissions, this Court's determines that no genuine issue as to any material facts exists. Therefore, Bender's motion to declare certain of Tobman's Judgment debts nondischargeable pursuant to § 523(a)(2)(A) should be granted.

## IV. COLLATERAL ESTOPPEL

Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *In re Overmyer*, 52 B.R. at 115. In *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979), the Supreme Court stated in *dicta* that if a state court determined factual issues using standards identical to those of § 17 of the former Bankruptcy Code (§ 523 of the present Code) then collateral estoppel would bar the relitigation of those issues in the bankruptcy court. *In re Ross*,

602 F.2d 604 (3rd Cir.1979); *Overmyer*, 52 B.R. at 115.[10]

The Sixth Circuit further developed the principle enumerated in *Brown v. Felsen* stating:

Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy court while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make the legal conclusion.... However, that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

*In re Stone*, 90 B.R. 71, 74 (Bankr.S.D.N.Y. 1988) (quoting *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981)). *See also, Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir.1988); *In re Wallace*, 840 F.2d 762 (10th Cir.1988). Thus, although this Court must ultimately determine whether a debt is dischargeable pursuant to § 523, "the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability." *In re Stone*, 90 B.R. at 75; *In re Wallace*, 840 F.2d at 764; *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377–78 (5th Cir.1980).

Bankruptcy Courts within the Second Circuit have uniformly held that the doctrine of collateral estoppel can be applied in

---

regarding any specific misrepresentations alleged to have been made.

\* . \* \* \* \* \*

15. The Plaintiff cannot seek summary judgment relative to the judgment that arose out of his claims for recovery of the sums that were invested in and/or loaned to "Universal" since, among other things:

(a) The District Court's record is completely silent as to the factual basis behind the Jury's "Special Verdict";

(b) The record of the proceedings before the District Court does not show that there was a determination, in that forum, of the factual issues necessary to meet the "fraud"

criteria cognizable under Bankruptcy Code Section 523.

10. *Brown v. Felsen, supra,* note 10, reads in pertinent part as follows:

This case concerns res judicata only, and not the narrower principle of collateral estoppel.... If, in the course of adjudicating a state-law question, a state court should determine issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

§ 523 dischargeability proceedings when the following four-part test has been met:

(1) The issue sought to be precluded is the same issue as that involved in the prior action;

(2) The issue has actually been litigated;

(3) The issue has been determined by a valid and final judgment; and

(4) The determination was essential to the final judgment.

*In re Allen,* 3 B.R. 355, 357–58 (Bankr.W. D.N.Y.1980). *See also, In re Herman,* 6 B.R. 352, 359–60 (S.D.N.Y.1980); *In re Goux,* 72 B.R. 355 (Bankr.N.D.N.Y.1987); *In re Overmyer,* 52 B.R. at 115; *In re Esposito,* 44 B.R. at 823; *In re Graziano,* 35 B.R. 589, 594 (Bankr.E.D.N.Y.1983); *In re Spector,* 22 B.R. 226, 231 (Bankr.N.D.N. Y.1982); *In re Sloan,* 18 B.R. 1021, 1023 (Bankr.E.D.N.Y.1982); *In re Supple,* 14 B.R. 898, 903 (Bankr.D.Conn.1981); *In re Iannelli,* 12 B.R. 561, 563 (Bankr.S.D.N.Y. 1981).

## V. SECTION 523(a)(2)(A) EXCEPTION TO DISCHARGE

Section 523(a)(2)(A) of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\*　　\*　　\*　　\*　　\*　　\*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

"The burden of proving all of the elements of § 523 falls on the party objecting to the dischargeability of the debt." *In re Esposito,* 44 B.R. at 823. *See, e.g., In re Patch IV,* 24 B.R. 563, 565 (D.Md.1982); *In re Dawson,* 16 B.R. 70, 73 (Bankr.E.D.Va. 1981); *In re Spangler,* 14 B.R. 598, 600 (Bankr.W.D.Va.1981), 3 Collier on Bankruptcy, ¶ 523.09 at 523–49 (15th ed.1979).

A debt is nondischargeable under 11 U.S. C. § 523(a)(2)(A) if:

(1) the debtor made representations;

(2) the debtor knew the representations were false at the time they were made;

(3) the representations were made with the intent to deceive the creditor;

(4) the creditor relied on the representations;

(5) the creditor was injured by the representations and suffered damage as a result.

*In re Newmark,* 20 B.R. 842, 853–54 (Bankr.E.D.N.Y.1982).

This Court finds that in the present cause of action, the above criteria have all been met. The elements of fraudulent inducement in the prior action and as defined by § 523(a) are virtually identical. In order to establish the common law tort of fraudulent inducement under the criteria in the District of Columbia a plaintiff must show:

(1) a false representation;

(2) in reference to a material fact;

(3) made with knowledge of its falsity; and

(4) with intent to deceive; and

(5) with action taken in reliance upon the representation.

*Nader v. Allegheny Airlines, Inc.,* 626 F.2d 1031, 1036 (D.C.Cir.1980); *Raynor v. Richardson–Merrell, Inc.,* 643 F.Supp. 238, 243 (D.D.C.1986). Indeed, the Jury Instructions followed exactly the District of Columbia's standard for establishing the tort of fraudulent inducement. Additionally, District Judge Gasch explained in detail each element required to be established by Bender in order for him to sustain this cause of action. (*See* Jury Instructions at 21–22.)

Furthermore, the standard used by courts in this Circuit to determine the nondischargeability of a debt is that the creditor must prove his case by clear and convincing evidence. *In re Overmyer,* 52 B.R. at 116; *In re Schwartz,* 45 B.R. 354, 357 (Bankr.S.D.N.Y.1985); *In re Buford,* 25 B.R. 477, 481 (Bankr.S.D.N.Y.1982); *In re Newmark,* 20 B.R. at 853. Likewise, the standard used by the District of Columbia and annunciated in the Jury Instructions is that fraudulent inducement must be established by clear and convincing evidence. *See, e.g., Raynor,* 643 F.Supp. at 243; Jury

Instructions at 21–25. In addition, the fact that Bender was required to prove his case by clear and convincing evidence was repeated in the Jury Instructions as each element of fraudulent inducement was stated and explained. (*See* Jury Instructions at 23–25.) The Jury even requested that the portion of the Jury Instructions dealing with fraudulent inducement be repeated. Thus, the requirement in *Brown v. Felsen, supra,* that the standard of proof be identical for determining whether collateral estoppel is applicable has been met in this case.

Tobman argues that Bender in the instant case cannot seek summary judgment on the nondischargeability of the judgment indebtedness that arose from a prior court's jury verdict because, among other things:

(a) the District Court record is completely silent as to the factual basis behind the jury's wholly conclusory "special verdict"; and

(b) the record of the proceedings before the District Court does not show that there was a determination, in that forum, of the factual issues necessary to meet the "fraud" criteria cognizable under the Bankruptcy Code § 523.

Defendant's Memorandum of Law In Opposition To Plaintiff's Motion For Summary Judgment And In Support of Cross–Motion For Partial Summary Judgment at 12.

■ This Court disagrees with Debtor's bold assertions. Tobman has completely misconstrued the relevant case law on these issues and ignores several cases which are directly on point. As stated previously, it is this Court which ultimately must determine whether or not a debt is dischargeable. However, this Court is not required to redetermine all the underlying facts, it may consider not only the Special Verdict, but also the entire record of the prior proceeding.

A bankruptcy court's reliance on a prior jury verdict's preclusive effect is not a novel concept in the context of a dischargeability proceeding. The Court in *In re Sloan,* for example, was confronted with a fact pattern which closely parallels the instant case. 18 B.R. 1021 (Bankr.E.D.N.Y. 1982). In *Sloan,* the previous court proceeding involved a jury's special verdict based upon common law fraud. The Court held that although all four requirements of collateral estoppel had been met, it was still obligated to review the record of the prior proceeding in making a determination of nondischargeability. The Court found ample support for the plaintiff's summary judgment motion based upon an examination of the prior Court's record.

> The prior action ... involved the same parties, judgment was by a jury on the issue of fraud, judgment was not entered pursuant to a default by debtor and plaintiff proved its case by clear and convincing evidence.

*Id.* at 1024.

Similarly, in the instant case, the prior action involved these same two parties, the judgment rendered by the jury was on the issue of fraudulent inducement, the judgment was entered in a fully litigated trial and not pursuant to a default by Tobman, and Bender proved his case by clear and convincing evidence.

A second case on point within this Circuit is *In re Greenblatt,* 8 B.R. 994 (Bankr.E.D. N.Y.1981), which held that based upon the criteria stated in *Brown v. Felsen, supra,* "the Jury Verdict rendered in the state court action presents a classic case of a liability incurred by false pretenses or false representation under § 523(a)(2)(A) of the Bankruptcy Code." *In re Greenblatt,* 8 B.R. at 997. The *Greenblatt* Court granted the plaintiff's motion for summary judgment based on its determination that the debtor "failed to raise any triable issue of fact not previously disposed of in the State Court proceeding." *Id.* at 997. The instant case is similarly ripe for summary judgment because Tobman, has not raised any genuine issue of material fact which the prior court proceeding had not properly and previously determined or which cannot be gleaned from an examination of the prior court ·record.

■ The Fourth Circuit has recently addressed the preclusive effect of a civil jury verdict in a subsequent bankruptcy pro-

ceeding. *See, Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988). Tobman relies on *Combs* in his Memorandum of Law in support of his position that "the determination that an issue was actually litigated and necessary to the judgment must be made with particular care." *Id.* at 113. *See* Defendant's Memorandum Of Law In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Cross–Motion For Partial Summary Judgment at 18.[11] However, Tobman fails to mention that the Court in *Combs* granted the plaintiff's motion for summary judgment for nondischargeability pursuant to 11 U.S.C. § 523(a)(6) based upon its examination of both the jury instructions and verdict in the earlier action. The Court found that the jury instructions clearly demonstrated that "the willful and malicious nature of defendant Combs' actions was actually and necessarily litigated." *Id.* at 113.[12]

Based upon the aforementioned case law and upon a review of the District Court record, I find that Bender has met his burden in establishing all the necessary elements under the four-part test to invoke the doctrine of collateral estoppel. Although it is true that the issue of dischargeability in a bankruptcy context was not specifically an issue in the previous action, the issue as to Tobman's liability to Bender based upon fraudulent inducement is essentially the same as that involved in the prior District Court Action. *See, In re Stone,* 90 B.R. 71, 75 (Bankr.S.D.N.Y.1988). The issue before the Jury in this regard was whether Tobman defrauded Bender by various alleged violations of law for the sum of approximately $287,500. (*See* Jury Instructions at 14.) Specifically, the District Court Complaint alleged that Bender was fraudulently induced by Tobman to advance funds for Tobman and a corporation, Universal; that Tobman misrepresented to Bender the financial condition and business prospects of two corporations; that Tobman misrepresented the capital contributions and loans that had been made to Universal by Tobman and another investor; that Tobman misrepresented his own financial condition and ability to make further loans to the corporations; that Tobman misrepresented how Bender's funds were going to be applied; and that Tobman misrepresented that Bender's loans would be fully secured. (*See* Jury Instructions at 20–21.) Thus, the Jury was presented with Tobman's overall scheme to defraud Bender and even determined that Tobman's actions were so grievous that punitive damages were justified. Tobman's argument, therefore, that the fraud criteria cognizable under § 523 has not been met is disingenuous at best.

---

**11.** Counsel for Tobman relies on several other cases in which the preclusive effect of a prior court's decision was not given credence by the bankruptcy courts. However these cases are easily distinguished as they involve insufficient prior court records upon which the bankruptcy court could rely. In *In re Whitmore,* 7 B.R. 835, (Bankr.N.D.Ga.1980) for instance, the motion for summary judgment based upon the doctrine of collateral estoppel was denied because there was no record for the Court to discern the basis for the judgment entered in the prior proceeding as written findings of fact and conclusions of law were waived by the parties in the state court action.
Furthermore, in *In re Trewyn,* 12 B.R. 543 (Bankr.W.D.Wis.1981), the Court refused to give the prior state court action a preclusive effect on the issue of nondischargeability because the only evidence of the state court action before the bankruptcy court was a copy of the judgment which lacked any detailed statement of its basis in fact.
Thus, it is clear that the authorities cited by Tobman are either distinguishable or not appli-

cable. The record before this Court is sufficiently robust to warrant a determination of nondischargeability based upon collateral estoppel.

**12.** *See also, In re Latch,* 820 F.2d 1163 (11th Cir.1987) (Court of Appeals held that the bankruptcy judge was bound to give collateral estoppel effect to the prior court's jury verdict based upon the entire District Court record, thus precluding discharge of the judgment debt); *In re Shepherd,* 56 B.R. 218 (W.D.Va.1985) (court held that judgment debt was nondischargeable pursuant to § 523(a)(6) as the issues in the Bankruptcy Court and state court were identical and thus based upon the doctrines of res judicata and equitable estoppel the debtor cannot relitigate the jury verdict award for both compensatory and punitive damages); *In re Caldwell,* 60 B.R. 214 (Bankr.E.D.Tenn.1986) (court held that debtor was collaterally estopped by prior state court judgment based upon a jury verdict from contesting dischargeability of debt).

In addition, the issue of "fraudulent inducement" was actually litigated, was determined by a valid and final judgment in the District Court[13] and the determination was essential to the final judgment. In fact, Tobman's trial Counsel by his own admission stated "[w]e concede that by finding all credibility issues against Tobman and resolving all reasonable inferences in Bender's favor, the jury was entitled to find for Bender on his fraud and conversion claims." (*See* Memorandum of Points and Authorities in Support of Defendant Tobman's District Court Motion Under Rule 50(b) at 2.) Furthermore, Tobman's trial Counsel admitted that Bender's thesis at trial which "was that Tobman misstated Universal's prospects and his own assets and stake in Universal ..." was accepted by the Jury. *Id.* Finally, trial Counsel conceded that "we cannot contest the jury's finding that Tobman made misrepresentations to Bender...." *Id.* at 4. Although this Court, declines to use the doctrine of "judicial estoppel"[14] as advocated by Bender's Counsel, the above statements made by Tobman's trial Counsel do undermine several of Tobman's present Counsel's positions taken in regard to the factual basis behind the Special Verdict.

■ Furthermore, this Court is not convinced by Tobman's assertion that because the Special Verdict does not specifically state whether or not the Jury's finding of fraudulent inducement was based on the Tobman's use of a statement in writing respecting the Tobman's financial condition, § 523(a)(2)(B)[15], that Bender's motion for summary judgment must be denied.

This Court holds that based upon its review of the entire District Court record, there is ample evidence to support a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A). Tobman has already had his "day in court" and he will not be given a second chance to reargue what has previously been heard in the District Court Action. Implicit in the District Court record is Tobman's overall scheme to defraud Bender of which one element included statements as to Debtor's financial condition. "[T]he Debtor's conduct fully comports with that which is proscribed by § 523(a)(2)(A), rendering the subject debt nondischargeable." *In re Creed*, 92 B.R. 240, 242 (Bankr.N.D. Ohio 1988). Thus, the Jury's Special Verdict, based upon the District Court record, is tantamount to a finding of actual fraud pursuant to § 523(a)(2)(A). There is no need to retry the entire case to determine whether the judgments are also nondischargeable under § 523(a)(2)(B).

■ Finally, this Court holds that both the punitive damages and the Judgment for accrued interest are likewise nondischargeable. Tobman has moved for summary judgment for dismissal of these portions of Bender's Complaint seeking to have this Court deem both the Judgment of $38,748.44 for accrued interest and the punitive damage award nondischargeable. Tobman bases this branch of his motion on the grounds that because neither the judgment in the sum of $38,748.44 nor the punitive damage assessment in the sum of $100,000 are based upon any findings that are cognizable under § 523 of the Code, they are

---

**13.** Defendant's Counsel concedes that the Jury Verdict is final and nonappealable. *See* Transcript at 11; Defendant's Supplementary Memorandum at 2.

**14.** "The doctrine of judicial estoppel 'is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.'" *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir.1988) (quoting, *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164, 174 (5th Cir.1973).)

**15.** 11 U.S.C. § 523(a)(2)(B) provides in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

*   *   *   *   *   *

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.

dischargeable. (*See,* Irwin Tobman's Affidavit In Opposition To Motion For Summary Judgment And In Support of Cross–Motion For Partial Summary Judgment at 14.)

In this case, "both punitive and compensatory damages flow from one and the same course of conduct." *Coen v. Zick,* 458 F.2d 326, 329 (9th Cir.1972). Therefore, based on Debtor's fraudulent conduct neither the compensatory nor punitive damages are dischargeable. *See, In re Adams,* 761 F.2d 1422, 1428 (9th Cir.1985) (court held that both compensatory and punitive damages are nondischargeable pursuant to §§ 523(a)(6) and 523(a)(9) based upon a finding that there is no evidence in the legislative history that suggests that Congress intended to limit the scope of nondischargeability to compensatory damages); *In re Shepherd,* 56 B.R. 218, 220 (W.D.Va. 1985) (state court judgment against debtor for intentional torts of assault and battery, false imprisonment and malicious prosecution awarding compensatory and punitive damages held nondischargeable pursuant to § 523(a)(6)); *In re Caldwell,* 60 B.R. 214, 219 (Bankr.E.D.Tenn.1986) (bankruptcy court held that under the well-settled weight of authority, both compensatory and punitive damages are subject to findings of nondischargeable pursuant to § 523(a)(6)). *See also, In re Webster,* 1 B.R. 61 (Bankr.E.D.Va.1979); *In re Berberian,* 34 B.R. 580 (Bankr.D.R.I.1983); *Coen v. Zick,* 458 F.2d at 329. In addition, the determination that interest as allowed in the judgment of a prior court action is nondischargeable along with the principal debt owed is not without precedent within this District. *See, Overmyer,* 52 B.R. at 124. Thus, because the compensatory damages are nondischargeable, the Jury's award of punitive damages and the Judgment allowing for accrued interest are nondischargeable as well.

## VI. CONCLUSION

In conclusion, this Court finds that Bender is entitled to an Order granting summary judgment with respect to the nondischargeability of his claims against Tobman for 1) the Judgments in the amount of $287,500.00 pursuant to 11 U.S.C. § 523(a)(2)(A); 2) the Judgment in the amount of $100,000 based upon the punitive damages award; 3) costs later assessed at $5,742.02; and 4) the amended Judgment allowing for an additional $38,748.44 for accrued interest.

Tobman is denied his request for partial summary judgment and for dismissal of that portion of the Complaint wherein it is alleged that the Judgment for $38,748.44 arising from accrued interest is nondischargeable. Tobman is also denied his request for an Order mandating that Bender comply with Defendant's outstanding request for pre-trial discovery as it relates to issues determined by this decision. Finally, Tobman is denied his request for awarding Defendant sanctions, including costs and attorney's fees, as authorized under the Federal Rule 11 made applicable herein pursuant to Bankruptcy Rule 9011.

Submit Judgment and Order consistent with the foregoing.