**In re Irwin A. TOBMAN, Debtor.**

**Morton A. BENDER, Plaintiff–Appellee,**

**v.**

**Irwin TOBMAN, Defendant–Appellant.**

**No. 89 Civ. 3749 (JMW).**

United States District Court,
S.D. New York.

Nov. 3, 1989.

Sheldon Hirshon, Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiff-appellee.

Donald J. Tobias, Law Offices of Donald J. Tobias, New York City, for defendant-appellant.

---

WALKER, District Judge:

Debtor Irwin Tobman ("Tobman"), defendant-appellant brings this action pursuant to 28 U.S.C. § 158, to appeal an order and judgment of the United States Bankruptcy Court, Southern District of New York (Lifland, J.), dated April 6, 1989 [1], granting Morton A. Bender ("Bender"), plaintiff-appellee, summary judgment on the issue of the nondischargeability of certain of Tobman's debts to Bender pursuant to 11 U.S.C. § 523(a)(2)(A). Bender argues that the Bankruptcy Judge properly applied the doctrine of collateral estoppel in granting summary judgment, and seeks sanctions pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 against Tobman and his counsel. Tobman also seeks sanctions against Bender and his counsel.

## I. BACKGROUND

The following summary of pertinent facts is derived from the opinion of Bankruptcy Judge Burton Lifland. On October 16, 1981, Bender filed a multi-count complaint in the United States District Court for the District of Columbia against Tobman and others, asserting claims against Tobman for fraudulent inducement, willful conversion, breach of contract, securities fraud, and breach of fiduciary duty ("District Court Action"). The complaint alleged that Bender gave Tobman $125,000 for the purpose of purchasing a 25% interest in Tobman's company, Universal Housing Systems of America, Inc. ("Universal"), and $162,500 in loans to Universal. It is undisputed that Bender never received the stock which was ultimately registered in Tobman's name. The complaint further alleged that Tobman converted $110,000 which Bender gave Tobman for the purpose of making a loan to Universal. To the extent that Bender's money was used as loans for Universal, the complaint alleged that these loans were recorded in the name of Tobman.

Most relevant to this appeal, the complaint asserted that Tobman fraudulently induced Bender to advance him $125,000 to purchase stock for Bender in Universal,

$110,000 as a loan to Universal, and $52,000 as a further loan to Universal. Bender claims that in order to induce him to give Tobman these sums, Tobman misrepresented to him:

1. the financial condition and business prospects of Universal, and Extrudyne, another of Tobman's business ventures;

2. the capital contributions and loans that had been made to one of the corporations by Tobman to a third party;

3. Tobman's own financial condition and ability to make further loans to the corporations;

4. how Bender's funds were going to be applied; and

5. that the loans would be fully secured.

The complaint also alleged that Tobman violated section 10(b) of the Securities and Exchange Act and Rule 10b–5 promulgated thereunder by making these misrepresentations in connection with the purchase of the Universal stock.

The District Court Action was fully tried before a jury. At the close of the evidence, Judge Oliver Gasch instructed the jury in pertinent part:

One who fraudulently makes a false representation of fact for the purpose inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance on that misrepresentation. Bender has asserted that he was fraudulently induced by Tobman to advance funds for Tobman and Universal Housing. *He claims that Tobman misrepresented to him the financial condition and business prospects of Universal Housing and Extrudyne, that Tobman misrepresented the capital contributions and loans that had been made to Universal by Tobman and Cantor, that Tobman misrepresented his own financial condition and ability to make further loans to the corporations, that Tobman misrepresented how Bender's funds*

1. Case No. 87 B 10632 (BRL), Adv. No. 88–    53717A.

*were going to be applied and that Tobman misrepresented that Bender's loans would be fully secured.* (emphasis added).

Bender alleges that as a result of these misrepresentations, he made payments aggregating $235,000 to Tobman and $52,500 to Universal Housing ... In order to establish a claim for fraudulent misrepresentation, Bender must prove each of the following essential elements of this claim by clear and convincing evidence: One, *a false representation of material fact* made by Tobman; Two, knowledge or belief on the part of Tobman that the representation was false; Three, an intention by Tobman to induce Bender to act or refrain from acting in reliance on the misrepresentation; Four, reliance by Bender on the misrepresentation for investing funds in Universal Housing and becoming involved in Acro; Five, damages resulting from Bender's reliance on the misrepresentation. (emphasis added).

Jury Instructions, Ex. D–33 at 20–22. The Jury found for Bender. Ex. D–15. The Special Verdict form stated in pertinent part:

1. Tobman fraudulently induced Bender to transmit $125,000 to him for the purposes of purchasing stock in Universal. (*See* Verdict Form, Ex. D–15 at 1(a)).
2. Tobman fraudulently induced Bender to make a $110,000 loan to Universal in May, 1978. (*See* Ex D–15 at 1(b)).
3. Tobman fraudulently induced Bender to make a loan of $52,500 to Universal in October, 1978. (*See* Ex. D–15 at 1(c)).
4. Jury awards Bender punitive damages against Tobman in the amount of $100,000. (*See* ex. D–15 at 6(b)).

In accordance with the jury's decision, the District Court entered judgments of $387,500 plus $5,742 in costs for Bender, and later added $38,784 in accrued pre-judgment interest on Bender's $52,500 loan to Tobman.

**2.** Congress enacted the discharge provisions of the Bankruptcy Code to give debtors a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Lines v. Freder-*

On April 7, 1987, Bender initiated involuntary bankruptcy proceedings against Tobman. On April 4, 1988, Bender filed a complaint in the Bankruptcy Court seeking an order pursuant to Bankruptcy Code ("Code") §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6), barring the discharge of Tobman's judgment debts to Bender. Bender moved for summary judgment based on collateral estoppel, which Bender asserted precluded Tobman from relitigating the facts that were tried in the District Court Action. Bender maintained that the findings of the jury were sufficient to make Tobman's debts arising from the verdict nondischargeable, and thus, no genuine issues of material fact remained for the court to determine regarding nondischargeability of the judgment debts.

The Bankruptcy Court agreed and granted summary judgment for Bender finding that Tobman's debts were nondischargeable "pursuant to § 523(a)(2)(A) based upon the jury's findings against Tobman on the issue of fraudulent inducement." *In re Tobman*, 96 B.R. 429, 432 n. 3 (Bkrtcy.S.D. N.Y.1989).[2] Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\*    \*.    \*    \*    \*    \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

The party objecting to the dischargeability of a debt carries the burden of proving all of the elements of § 523. 3 Collier, *Bankruptcy* ¶ 523.09 at 523–49. The Court finds that Bender has failed to meet his burden.

*ick,* 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970). However, Congress provided only limited discharge to debtors who have incurred debts as a result of "unwholesome" conduct. *Tobman.*

## II. DISCUSSION

This court reviews de novo the bankruptcy court's grant of summary judgment. *See In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (9th Cir. BAP 1989); *In re Marvin Properties, Inc.*, 854 F.2d 1183, 1185 (9th Cir.1988); *see also Lerch v. Federal Land Bank*, 94 B.R. 998, 1001 (N.D.Ill.1989) (district court is free to make independent examination and to substitute its judgment for that of the bankruptcy court on issues of law or mixed issues of law and fact).

In this case, Bender relies on the collateral estoppel effect of the Jury Verdict in the District Court Action in his motion for summary judgment. Therefore, as the bankruptcy court stated in its opinion, "Bender has the burden of introducing a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Tobman*, 96 B.R. at 434 (quoting *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980).

The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating an issue that was "raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 62 (2d Cir. 1989). In *Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), the Second Circuit succinctly summarized the four conditions that must be satisfied to invoke collateral estoppel:

(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

It is well established that although the bankruptcy court must ultimately determine whether a debt is dischargeable pursuant to § 523 of the Bankruptcy Code ("Code"), "the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability." *Tobman*, 96 B.R. at 435 (quoting *inter alia Carey Lumber Co. v. Bell*, 615 F.2d 370, 377-78 (5th Cir.1980). Thus, if the decision in the prior action determined factual issues using standards identical to those of § 523, then collateral estoppel would preclude the relitigation of those issues in the bankruptcy court. *See Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). A bankruptcy court may, in appropriate cases, give preclusive effect to a civil jury verdict in determining the dischargeability of debts under § 523 based upon the entire District Court record. *See In re Latch*, 820 F.2d 1163 (11th Cir. 1987); *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988).

Relying on the jury instructions issued by Judge Gasch and the jury's Special Verdict Form in the District Court Action, the bankruptcy court gave preclusive effect to the jury's determination that Tobman had fraudulently induced Bender to give him $287,500, thus barring the relitigation of the issue of fraud under § 523(a)(2)(A). This finding was in error.

The bankruptcy court erred in applying collateral estoppel to preclude the litigation of the issue of fraud for § 523 purposes because the record relied upon by the court in invoking issue preclusion does not definitively establish fraud cognizable under that section.

The bankruptcy court relied on the jury instructions and the jury's verdict on Bender's fraudulent inducement claim in granting Bender relief. *Tobman*, 96 B.R. at 432 n. 3. However, Bender's fraudulent inducement claim was based on numerous material misrepresentations by Tobman. Some of these statements meet the requirements of § 523(a)(2)(A) and would thus render Tobman's debts nondischargeable, and some do not. Two of the statements involved Tobman's financial condition and the financial condition of Universal, a corporation in which Tobman was a principal officer. Jury Instructions, Ex. D-33 at 20-21. These statements alone would not render

Tobman's judgment debts nondischargeable as fraudulent statements "respecting the debtor's or an insider's financial condition" do not satisfy the § 523(a)(2)(A) exception to dischargeability.[3]

Judge Gasch instructed the jury that "in order to establish a claim for fraudulent misrepresentation, Bender must prove ... *a false misrepresentation of material fact made by Tobman.*" *Id.* at 21. Thus, if the jury found that Tobman had made any *one* of the five misrepresentations it could find for Bender. The jury's verdict sheet indicated only that it found for Bender on his fraudulent inducement claims. The jury had no opportunity to indicate upon which statement or statements they based their verdict.

In order to apply collateral estoppel, the issue in the prior proceeding must have been "actually decided." *Gelb,* 798 F.2d at 44. Since the judge instructed the jury that they need find only that Tobman made "a false misrepresentation of material fact" to find for Bender, it is not clear that the jury found that Tobman had in fact made misrepresentations other than those related to his and Universal's financial condition. The record is silent as to which of the fraudulent statements alleged in the complaint and repeated to the jury by Judge Gasch formed the basis of the jury's verdict. Thus, it cannot be said that the jury "actually decided" that Tobman had committed fraud cognizable under § 523(a)(2)(A). Under these circumstances, the doctrine of collateral estoppel may not properly be invoked.

The bankruptcy court's assertion that "implicit in the District Court record is Tobman's overall scheme to defraud Bender of which one element included statements as to Debtor's financial condition" is not sufficient to support its decision. Impressionistic characterizations of the jury verdict are not substitutes for compliance with the specific conditions required to invoke collateral estoppel as articulated by the Second Circuit. Nor is the jury's award of punitive damages a sufficient basis for invoking collateral estoppel. The

jury's determination that Tobman acted with malice or in willful, wanton or reckless disregard of Bender's rights, *see* Jury Instructions at 44, does not compel the conclusion that the jury actually decided that Tobman made misrepresentations concerning matters other than his own and Universal's financial condition.

### III. CONCLUSION

Accordingly, the bankruptcy court's order granting summary judgment with respect to the nondischargeability of Bender's claims against Tobman pursuant to § 523(a)(2)(A) is reversed. The case is remanded to the bankruptcy court for further consideration of Bender's motion for summary judgment pursuant to §§ 523(a)(2)(B), 523(a)(4) and 523(a)(6) which the bankruptcy court did not consider.

The Court finds that sanctions are not warranted under Fed.R.Civ.P. 11 or 28 U.S.C. § 1927. Accordingly, Bender and Tobman's requests for sanctions are denied.

SO ORDERED.

---

**3.** Universal qualifies as an "insider" for purposes of § 523(a)(2)(A) under 11 U.S.C. § 101(30)(A) which provides that "if the debtor is an individual," an insider may be a "corporation of which the debtor is a director, officer or person in control."